UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

OTIS BRIDGEFORTH,

                         Plaintiff,

      -against-                              1:08-CV-0779 (LEK/RFT)

COUNTY OF RENSSELAER, *et al.*,

                         Defendants.

_____

## MEMORANDUM-DECISION and ORDER

### I.     INTRODUCTION

       Plaintiff Otis Bridgeforth ("Plaintiff") commenced this action under 42 U.S.C. § 1983 *pro se* and *in forma pauperis* on July, 17, 2008.  See Dkt. No. 1 ("Complaint").  Presently before the Court are: (1) a Motion for summary judgment filed by Defendants on September 19, 2011; and (2) a Response and Cross-Motion seeking assorted relief filed by Plaintiff on September 28, 2011.  Dkt Nos. 114 ("Motion"); 119 ("Cross-Motion").

### II.    BACKGROUND

       A cursory review of the record reveals a convoluted procedural history, laden with extensive and often inappropriate and untimely filings.  The case itself arises from Plaintiff's arrest at his home in the city of Troy, New York and Plaintiff's subsequent allegations of official misconduct on the part of Troy police officers.  See generally Dkt. No. 10 ("Second Amended Complaint").  Plaintiff alleges that he was violently attacked by heavily-armed officers who came to his apartment in response to a claim that he had been brandishing a handgun.  Id.  Plaintiff has specifically alleged that during the arrest he was forcibly handcuffed by Defendant Officer Robert Nuttal ("Nuttal") and repeatedly kicked, while subdued and handcuffed, by Defendant Officer William Bowles ("Bowles").  Dkt. No. 114-3 at 33-35.

In the interests of judicial economy and minimizing inevitable redundancy, however, the Court

presumes the parties' familiarity with the facts underlying this action and recites the them only to the

extent necessary to resolve the instant Motions.  For a more detailed statement of facts, reference is

made to Plaintiff's Second Amended Complaint.  Further, the Court provides a brief procedural history

in an effort to provide a general context for the instant Motions.

Plaintiff initially filed his civil rights Complaint on July 17, 2008.  Compl.  Prior

to services of Summonses and Complaints upon the twenty-four named defendants, Plaintiff amended

his Complaint and filed a Motion for Summary Judgment.  Dkt. Nos. 6, 7.  Before the Court adopted a

Report and Recommendation by the Honorable Randolph F. Treece, United States Magistrate Judge,

dismissing the Complaint for failure to comply with Federal Rule of Civil Procedure 8 and 10, Plaintiff

filed a Second Amended Complaint, naming twenty-six individuals as defendants, including law

enforcement officers, attorneys, then Rensselaer County District Attorney and her staff, and two judges.

Dkt. Nos. 8 ("August 2008 Report-Recommendation"), 11 ("August 2008 Order").   On December 8,

2008, the Court adopted another Report-Recommendation by Judge Treece and, *inter alia*, dismissed

most of the named defendants and all of Plaintiff's claims except for his excessive force claim against

nine current and former members of the Troy Police Department.  Dkt. Nos. 19 ("December 2008

Order"), 14 ("October 2008 Report-Recommendation").

In the intervening years, Plaintiff has filed numerous motions without the assistance of counsel,

seeking, *inter alia*, injunctive relief and a declaratory judgement.  See, e.g., Dkt. Nos. 59, 68.  The

Court does not find it necessary to recount in detail this extensive motion practice but notes that the

majority of these motions have either been denied or struck by the Court or by Judge Treece, often due

to procedural error.  See, e.g., Dkt. Nos. 69, 72, 95.  On January 3, 2011, Defendants also filed a

Motion to dismiss pursuant to Federal Rule of Civil Procedure 37 because Plaintiff had failed to appear

at a scheduled deposition.  Dkt. No. 83.  On March 28, 2012, the Court denied Defendant's Motion in

addition to an assortment of requests by Plaintiff.  Dkt. No. 125.

Based on the December 2008 Order and subsequent decisions, the only claim still before the

Court is Plaintiff's allegation that he was subjected to excessive force by his arresting officers.

Defendants have moved for summary, arguing that: (1) Plaintiff's excessive force claim fails as a

matter of law; (2) the Troy police officers are entitled to qualified immunity; and (3) the Defendants

with no personal involvement are entitled to summary judgment.  Mot. at ii.  Plaintiff has filed a

Response and Cross-Motion, in which: (1) he contends that there are factual disputes, making a grant

of summary judgment for Defendants inappropriate; and (2) he appears to request that the Court

reconsider past decisions and orders, including more than one that have been the subject of previous

motions for reconsideration.  Cross-Mot. at 1-2.[1]

For the reasons that follow, the Court grants Defendants' Motion as to all Defendants other than

Defendant Bowles, denies Defendants' Motion as to Defendant Bowles, and denies Plaintiff's Cross-

Motion in its entirety.

## III.     STANDARD OF REVIEW

### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure instructs a court to grant summary judgment if

"there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law."  FED. R. CIV. P. 56(c).  Although "[f]actual disputes that are irrelevant or unnecessary" will not

---

[1]  In referring to the contents of the Cross-Motion, the Court uses the electronic page numbers entered by the Clerk on the top of each page.

preclude summary judgment, "summary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991).

The party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party claims will demonstrate the absence of a genuine issue of a material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). However, if the moving party has shown that there is no genuine dispute as to any material fact, the burden shifts to the non-moving party to demonstrate "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. This requires the non-moving party to do "more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Corp., 475 U.S. 574, 586 (1986).

At the same time, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 742 (2d Cir. 1998). The Court's duty in reviewing a motion for summary judgment is "carefully limited" to finding genuine disputes of fact, "not to deciding them." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2d Cir. 1994).

Credibility determinations are ordinarily the province of a jury, not a judge. Anderson, 477 U.S. at 255. However, in the "rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete," a court may appropriately conclude at the summary judgment stage that no reasonable jury would credit the plaintiff's testimony. Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005). "[T]his narrow exception is for testimony by a non-movant that possesses the following two characteristics: (1) it constitutes almost the exclusive

basis for a disputed issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct evidence); and (2) it is so lacking in credibility (because the testimony is incomplete and/or replete with inconsistencies and improbabilities) that, even after drawing all inferences in the light most favorable to the non-movant, no reasonable jury could find for the non-movant." Bradley v. Rell, 703 F. Supp. 2d 109, 114 (N.D.N.Y. 2010) (citations omitted). "Under these circumstances, the moving party must still meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor." Id. at 554 (citing Fischl v. Armitage, 128 F.3d 50, 56 (2d Cir. 1997)). Further, Jeffreys provides only a "narrow exception" to "the established rule that issues of credibility are not to be resolved by a court on a motion for summary judgment." Latouche v. Tompkins, No. 9:09–CV–308, 2011 WL 1103022, at *7-8 (N.D.N.Y. Mar. 4, 2011) (citations omitted).

### B. Motion for Reconsideration

The Court applies an exacting standard when reviewing a motion for reconsideration. Analytical Surveys, Inc. v. Tonga Partners, L.P., No. 09-2622-cv, 2012 WL 1970389, at *12 (2d Cir. June 04, 2012). "[R]econsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). Reconsideration is not appropriate "when the moving party seeks solely to relitigate an issue already decided," id. at 257, and "[i]t is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998). Therefore, the Second Circuit has held that there are

only three grounds upon which a court may grant a motion for reconsideration: (1) an intervening

change in law; (2) the availability of evidence not previously available; or (3) the need to correct a clear

error of law or to prevent manifest injustice.  <u>Virgin Atlantic Airways v. Nat'l Mediation Bd.</u>, 956 F.2d

1245, 1255 (2d Cir. 1992); <u>Doe v. New York City Dep't of Soc. Servs.</u>, 709 F.2d 782, 789 (2d Cir.

1983); <u>Bath Petroleum Storage, Inc. v. Sovas</u>, 136 F. Supp. 2d 52, 56 (N.D.N.Y. 2001) (Kahn, J.).

**IV.     DISCUSSION**

    **A. Plaintiff's *Pro Se* Status**

As a preliminary matter, the Court addresses whether Plaintiff is owed "special solicitude" by

the Court due to his status as a *pro se* litigant.  "It is well established that a court is ordinarily obligated

to afford special solicitude to *pro se* litigants."  <u>Tracy v. Freshwater</u>, 623 F.3d 90, 101 (2d Cir. 2010);

<u>see also</u> <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009); <u>Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d

185, 191 (2d Cir. 2008); <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474-75 (2d Cir. 2006);

<u>Nance v. Kelly</u>, 912 F.2d 605, 606 (2d Cir. 1990).  "The rationale underlying this rule is that a pro se

litigant generally lacks both legal training and experience and, accordingly, is likely to forfeit important

rights through inadvertence if he is not afforded some degree of protection."  <u>Tracy</u>, 623 F.3d at 101

(citing <u>Triestman</u>, 470 F.3d at 475).

However, "district courts within this Circuit have developed a practice of withdrawing this

solicitude if a *pro se* litigant is deemed to have become generally experienced in litigation through

participation in a large number of previous legal actions."  <u>Tracy</u>, 623 F.3d at 101.  (citations omitted).

While the United States Court of Appeals for the Second Circuit has "occasionally endorsed some

limited forms of this practice," it has also "expressed . . . concern that the general withdrawal of

solicitude may impose unreasonable burdens on pro se litigants in some circumstances."  <u>Id.</u> (citations

omitted).  "In sum, relevant precedent indicates that, while a *pro se* litigant should ordinarily be afforded a substantial degree of solicitude, the exact degree thereof will depend upon a variety of factors, including, but not necessarily limited to, the specific procedural context and relevant characteristics of the particular litigant."  Id. at 103.

In their Motion, Defendants argue that the Court should exercise its discretion and deny special solicitude to Plaintiff because: (1) he has "filed at least 41 federal civil lawsuits in four different district courts during the last three years;" (2) he filed his own Motion for summary judgment in this case (which was subsequently stricken); and (3) he has "experience with federal court summary judgment motions" and with the local rules.  Mot. at 3.  The Court notes that special solicitude takes numerous forms (e.g., relaxing procedural requirements; liberally construing pleadings).  See Tracy, 623 F.3d at 101-02 (collecting cases).  However, Defendants have not identified any particular area in which the Court should treat Plaintiff as an ordinary litigant, implying – presumably – that such solicitude should be withheld across the board.  The Court finds such an exercise of discretion and such a refusal to extend any sort of special solicitude to *pro se* Plaintiff would be inappropriate in this case.

First, that Plaintiff has undertaken myriad federal suits and has proven himself to be a prolific motion filer in no way demonstrates that Plaintiff has mastered or even grown particularly familiar with the substantive and procedural requirements for a properly filed summary judgment motion.[2]  A review of this case's crowded docket sheet reveals that Plaintiff has filed frequently, but been largely

---

[2] In reaching this conclusion, the Court does not means to challenge the finding of Judge Treece in his Order denying Plaintiff's request for appointment of counsel that "to date, Plaintiff has been able to effectively litigate this action."  Dkt. No. 124 at 2.  The fact that Plaintiff has not made errors sufficient to convince the Court or the Magistrate Judge that he is unable to vindicate his constitutional rights without assistance of counsel is hardly proof that Plaintiff has become an experienced litigator and should be assumed to possess the same knowledge, expertise, or even competence of a litigant represented by counsel.

unsuccessfully.  See generally Dkt.  Filings have often been premature or unintelligible and have demonstrated a misapprehension of the timing and content associated with various motions.  See, e.g., Dkt. Nos. 23-25, 121.  Indeed, the Response and Cross-Motion presently before the Court purports to be a "combined motion" but fails to clearly state what relief is actually sought, including instead a smattering of arguments and demands.[3]  Further, the Cross-Motion veers away from legal argument and devolves into a mix of personal invective and challenges addressed to Defendants.  See, e.g., Cross-Mot. at 4 ("THE STUPID IDIOT DEFENDANT FUCKED THE OPERATION UP"), 9 ("YALL NOT MY KIDS, I DON'T KNOW YOU, I DON'T WANT TO KNOW YOU, YALL BETTER PAY THE MONEY AND KEEP IT PEACEFUL"), 10 ("I'M STRAIGHT, AND YALL ARE CONTRADICTED, SO STOP SPEAKING ON MY CIVIL HISTORY BOYA").

In short, Plaintiff has not demonstrated to the Court that he is capable of navigating the challenging terrains of legal argument and civil procedure.  Therefore, the Court concludes that it should continue to grant Plaintiff special solicitude and construe his pleadings liberally in order to ensure that his claims are judged on their merit and not on their inartful recitation.

**B. Defendants' Motion for Summary Judgment**

*1. Plaintiff's Excessive Force Claim*

The only claim that remains before the Court is Plaintiff's claim that he was subjected to excessive force.  Dec. 2008 Order.  While this claim has been referred to in prior orders and submissions as falling under the Eighth Amendment, the Court concludes that because the alleged violence occurred during the course of Plaintiff's arrest, the claim is more appropriately treated as

---

[3]  The first two pages of the Cross-Motion include a numbered list of "causes" including "Defendants admit," "Motion to reconsider Dkt. # 68," and "objections."  Cross-Mot. at 1-2.

falling under the Fourth Amendment.  See, e.g., Powell v. Gardner, 891 F.2d 1039, 1044 (2d Cir. 1989)

("we think the Fourth Amendment standard probably should be applied at least to the period prior to

the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or

joint) of the arresting officer"); Quint v. Dunaj, No. 3:02CV2053, 2006 WL 167563, at *6 (D. Conn.

Jan. 20, 2006) ("the Second Circuit has taken a functional approach to determining when to apply the

Fourth, Fourteenth and Eighth Amendments in the context of a claim for use of excessive force.  The

continuum from arrest through incarceration is divided into three sections with different constitutional

provisions governing claims arising in each section: the period of arrest and custody prior to

arraignment is governed by the Fourth Amendment . . . and the time after conviction is governed by the

Eighth Amendment"); Smith v. P.O. Canine Dog Chas, No. 02 6240, 2004 WL 2202564, at *7 n.7

(S.D.N.Y. Sept. 28, 2004) (a "claim that police used excessive force in the course of an individual's

arrest or 'seizure' is properly analyzed under . . . the Fourth Amendment") (citing Graham v. Connor,

490 U.S. 386, 395-96 (1989)).[4]

---

[4]  Because a court must liberally construe the pleadings of a *pro se* plaintiff, see generally Part
IV.A, supra, the Court here treats Plaintiff's excessive force claim (described in the pleadings as
"Police Brutality") as a claim for excessive force under the Fourth Amendment as opposed to the
Eighth Amendment.  To this end, the Court also notes that Plaintiff identified the claim as arising
under both Amendments in his Second Amended Complaint.  Compare Second Amended Complaint at
13 (identifying the Second Cause of Action as a claim involving "Police Brutality" under the Second,
Fourth, Fifth, and Sixth Amendments), with ¶ 2 (stating that the alleged "assault" against Plaintiff by
Defendants was committed in violation of the Eighth Amendment).  That is, Plaintiff did not explicitly
state that he was bringing his excessive force claim under the Eighth Amendment as opposed to the
Fourth Amendment.

Further, while the Court has previously dismissed Fourth Amendment claims in this case, those
claims involved allegations of unconstitutional search and seizure that were barred by Heck v.
Humphrey. 512 U.S. 477, 486-87 (1994).  See December 2008 Order; October 2008 Report-Rec. at 2-
3.  Such claims were barred specifically because they challenged the validity of Plaintiff's criminal
conviction.  The Second Cause of Action for excessive force – that the Court allowed to go forward in
the December 2008 Order and that the Court is now clarifying as being treated as a claim under the
Fourth Amendment – does not challenge the underlying criminal conviction and does not cause the

A police officer's use of force is excessive in violation of the Fourth Amendment "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" Maxwell v. City of N.Y ., 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham, 490 U.S. at 397).  To succeed on an excessive force claim, a plaintiff must show that police officers deployed an "objectively unreasonable" amount of force.  Lowth v. Town of Cheektowaga, 82 F.3d 563, 573 (2d Cir.1996).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  Graham, 490 U.S. at 396 (citations and internal quotations omitted).

Further, "a *de minimis* use of force will rarely suffice to state a Constitutional claim."  Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).  "[T]he Second Circuit and district courts in the Circuit recognize the concept of 'de minimis' injury and, when the injury resulting from alleged excessive force falls into that category, the excessive force claim is dismissed."  Lemmo v. McKoy, No. 08-CV4264, 2011 WL 843974, at *5 (E.D.N.Y. Mar. 8, 2011).  However, "[i]f the force used was

---

same Heck problems that Plaintiff's dismissed Fourth Amendment claims did.  See, e.g., Bourdon v. Vacco, 213 F.3d 625 (2d Cir. 2000) (holding that Heck did not bar excessive force claims stemming from police officers' search); MacLeod v. Town of Brattleboro, No. 5:10-cv-286, 2012 WL 1928656, at *4 (D.Vt. May 25, 2012); Harley v. Suffolk County Police Dept., No. 09-CV-2897, 2012 WL 642431, at *9 (E.D.N.Y. Feb. 28, 2012); Greenfield v. Tomaine, No. 09 CIV. 8102, 2011 WL 2714221, at *7 (S.D.N.Y. May 10, 2011) ("In the Second Circuit, it is 'well established than an excessive force claim does not usually bear the requisite relationship under Heck to mandate its dismissal.'") (quotation omitted); Nelson v. Jashurek, 109 F.3d 142, 145-46 (3d Cir. 1997) (permitting an excessive force claim when plaintiff alleged that the officer "effectuated a lawful arrest in an unlawful manner").

Finally, Defendants have used the Fourth Amendment standard in arguing in opposition to this claim.  See, e.g., Mot. at 4-5.  Therefore, the Court concludes that Plaintiff's claim should be treated as one under the Fourth Amendment.

unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987); see also Maxwell v. City of New York, 380 F.3d 106, 108-10 (2d Cir. 2004); Davenport v. County of Suffolk, No. 99 CV 3088, 2007 WL 608125 (E.D.N.Y. Feb. 23, 2007).

In this case, Defendants argue that Plaintiff's excessive force claim should fail because: (1) Plaintiff's uncorroborated account of his arrest is inconsistent, incredible, and insufficient to support a § 1983 claim; (2) the force employed by officers was reasonable given the circumstances; and (3) even if the Court were to credit Plaintiff's account and find the alleged force unreasonable, Plaintiff has failed to prove injury. Mot. at 5-7.

The Court notes as a preliminary matter that Defendants' arguments apply differently to the different police officer Defendants. The Court concludes that Plaintiff's claims against officers who were merely present and had drawn their weapons at the time of arrest fail because – among other possible defects – Plaintiff has alleged no injury as a result of these officers' conduct. As to Defendant Nuttal, the Court concludes that any claim based upon Defendant Nuttal's handcuffing of Plaintiff also is deficient as a matter of law. Plaintiff provides practically no description of the specific conduct ascribed to Defendant Nuttal in his Second Amended Complaint but claims in his deposition that Defendant Nuttal violently handcuffed him. Dkt. No. 114-3 at 34-35. Absent some allegation beyond forceful cuffing, the claim against Defendant Nuttal is insufficient as a matter of law.[5] See Smith v.

---

[5] Plaintiff alleges that, during the application of the handcuffs, Defendant Nuttal bent Plaintiff's wrists in an attempt to injure him. Dkt. No. 114-3 at 34-35. The Court notes that acts of force beyond the actual application of the handcuffs might not be covered by the relevant case law finding that cuffing does not amount to excessive force. However, despite the late stage in the litigation, Plaintiff has provided no further description of Defendant Nuttal's actions and has alleged no injury or shown no proof of injury that might suggest to the Court that the force alleged was anything more than de minimis.

City of New York, No. 04 Civ. 3286, 2010 WL 3397683, at *10-11 (S.D.N.Y. Aug. 27, 2010)

(rejecting an excessive force claim based on the forcible cuffing of the plaintiff as a matter of law);

Rincon v. City of New York, No. 03 Civ. 8276, 2005 WL 646080, at *5 (S.D.N.Y. Mar. 21, 2005)

(dismissing plaintiff's excessive force claim in which plaintiff was thrown to the ground and

handcuffed by officers with weapons drawn during a search for drugs as insufficient as a matter of

law).

 Adopting a liberal reading of Plaintiff's allegations, however, the Court cannot conclude that

Plaintiff's claim against Defendant Bowles must be rejected as a matter of law.  First, while the Court

notes that Plaintiff's account of his arrest may contain inconsistencies and at times muddled and

extreme allegations, such weaknesses do not permit the Court to usurp the role of the jury and to deny

Plaintiff the opportunity to have a jury of his peers weigh his testimony against that of the arresting

officers.  Defendants urge the Court to apply the rule from Jeffreys because Plaintiff has relied solely

on his own testimony, which is so contradictory and incredible that no reasonable juror could return a

verdict in his favor.  Jeffreys, 426 F.3d at 554.  However, Jeffreys only provides a "narrow exception"

to "the established rule that issues of credibility are not to be resolved by a court on a motion for

summary judgment," Latouche, 2011 WL 1103022, at *7-8, and such an exception is only available in

"rare circumstance[s]."  Jeffreys, 426 F.3d at 554.  The United States Court of Appeals for the Second

Circuit has emphasized that it does "not suggest that district courts should routinely engage in

searching, skeptical analyses of parties' testimony in opposition to summary judgment."  Rojas v.

Roman Catholic Diocese of Rochester, 660 F.3d 98, 106 (2d Cir. 2011).  Such skepticism is only

appropriate "in certain extraordinary cases, where the facts alleged are so contradictory that doubt is

cast upon their plausibility, the court may pierce the veil of the complaint's factual allegations and

dismiss the claim." Id. (internal citations, quotation marks, and alteration omitted).

   The Court does not find that this case provides such an obvious and extraordinary situation such that the Court should substitute its determinations of credibility for those of a jury.  Defendants certainly identify clear inconsistencies between Plaintiff's account and objective evidence (e.g., Plaintiff's identification of Officer Bottillo as "he" when in fact the Officer is a female); however, Defendants also appear to treat conflicting witness testimony as proof of Plaintiff's inconsistency (e.g., Plaintiff claims that Officer Bowles kicked him with "steel toed boots," whereas Officer Bowles claimed to have been wearing sneakers).  Mot. at 6; see also Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, *one of which is blatantly contradicted by the record*, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.") (emphasis added).[6]

   Defendants attacks on Plaintiff's credibility might well convince jurors or at least lead reasonable jurors to view Plaintiff's claims with skepticism.  However, the Court is unconvinced that the evidence identified by Defendants so clearly impeaches Plaintiff's account as to cause the Court to take the extraordinary step of finding Plaintiff incredible as a matter of law.  For instance, that Plaintiff wrote a letter to the Troy Police Department in which he failed to refer to excessive force is not incontrovertible proof that he was not subjected to excessive force.  Dkt. No. 114-1 at 78-82; cf. Mot.

---

   [6]  To the extent that the Court identifies allegations by Plaintiff as actually contradicted by objective evidence on the record as opposed to by conflicting accounts of events contained in Defendants' testimony, the Court may not adopt those allegations.  Harris, 550 U.S. at 380.  However, the Court does not conclude that it must discredit Plaintiff's entire Second Amended Complaint and all factual allegations and accounts based on these inaccuracies.

at 6. A reasonable juror would presumably weigh this evidence,[7] but the Court is unconvinced that a reasonable juror must conclude based on the omission that no such excessive force occurred.

Further, Defendants contend that Plaintiff "appears completely normal in his mug shot" and that this photograph should lead the Court to discredit Plaintiff's account and rule for Defendants as a matter of law. Mot. at 6. Not only is the Court unconvinced that Plaintiff "appears completely normal," but also the Court finds no claim in Plaintiff's Complaint that he was bleeding from his face or had suffered some injury that would necessarily have been obviously visible in a photograph taken shortly after his arrest. The Court concludes that determining what – if anything – the mug shot shows and whether the photographic evidence supports, contradicts, or has no bearing upon Plaintiff's credibility is the sort of evidentiary question that reasonable jurors could disagree about and therefore is not the proper province of the Court's legal decision-making at the summary judgment stage.[8]

Given that the Court determines that there are material questions of fact as to what degree of force was applied during the course of Plaintiff's arrest, the Court cannot conclude as a matter of law that Defendant Bowles's conduct was reasonable. Further, while the ultimate question of the reasonableness of an officer's conduct is one for the jury,[9] to the extent that the Court credits Plaintiff's

---

[7] In reaching this conclusion, the Court takes no position on the ultimate admissibility at trial of the letter.

[8] In reaching this conclusion, the Court takes no position on the ultimate admissibility at trial of the mug shot or the possible need for the Court to conduct its own assessment of the photograph in determining its admissibility prior to or during the course of trial.

[9] "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham, 490 U.S. at 396-97. Further, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id.

14

allegations that he was kicked and battered while subdued, the Court notes that such conduct has often been denounced by Courts and cannot be identified as reasonable as a matter of law.  See, e.g., Pierre-Antoine v. City of New York, No. 04-CV-6987, 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (use of force against an already subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); Johnson v. City of New York, No. 05-CV-2357, 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment on claim of excessive force during execution of a search and noting that "[w]hile not every push or shove violates the Fourth Amendment . . . there surely would be no objective need to 'stomp' and 'kick' an individual already under police control."  (citations and quotations omitted)); Graham v. Springer, No. 03-CV-6190, 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (summary judgment denied because the plaintiff was kicked while on the ground in handcuffs); Lemmo, 2011 WL 843974, at *6.[10]

Finally, the Court concludes that it cannot grant summary judgment to Defendant Bowles based on his contention that the record demonstrates no injury to Plaintiff.  While the Court recognizes the importance of proof of injury to an excessive force claim, "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."  Robison v. Via, 821 F.2d 913, 924 (2d Cir. 1987).  Indeed, the United States Court of Appeals for the Second Circuit has "permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising."  Maxwell, 380 F.3d at 108 (citing Robison, 821 F.2d at 924-25).  In this

---

[10]  Defendants contend that "[e]ven if Bridgeforth's version [of events] could be believed, an officer's *de minimis* kicking of an arrestee to ascertain the location of a loaded weapon is not objectively unreasonable."  Mot. at 11.  Not only do Defendants fail to provide any citation to authority that might support this claim, but – as the Court notes – there appears to be substantial authority that directly contradicts this contention.

case, Plaintiff has alleged that he suffered injuries as a result of unreasonable and excessive force. While his injuries might not have been severe and while the record on this issue may be thin, the Court does not conclude that this element of the claim is so lacking as to warrant a grant of summary judgment.  See Robison, 821 F.2d at 924-25.

### 2. Qualified Immunity

Qualified immunity protects police officers acting in their official capacity from liability for damages under 42 U.S.C. § 1983, "unless their actions violate clearly-established rights of which an objectively reasonable official would have known."  Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999); see also Martinez v. Simonetti, 202 F.3d 625, 633-34 (2d Cir. 2000).  Because qualified immunity is an affirmative defense, however, "[t]he defendant must establish that he had an objectively reasonable belief that his act violated no clearly established rights."  Young v. Selsky, 41 F.3d 47, 54 (2d Cir. 1994) (citing Weg v. Macchiarola, 995 F.2d 15, 18 (2d Cir.1993)); see also Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007).  This "objective reasonableness" test is met if "officers of reasonable competence could disagree [on the legality of Defendant's actions]."  Malley v. Briggs, 475 U.S. 335, 341 (1986).

The determination of whether a defendant's conduct meets the first prong of the qualified immunity test – that the right in question was clearly established at the time of an alleged violation – is a question of law to be determined by the court.  See, e.g., Crawford-El v. Britton, 523 U.S. 574, 589 (1998); Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); X-Men Security, Inc. v. Pataki, 196 F.3d 56, 66 (2d Cir. 1999).  The second prong of the qualified immunity test – whether an objective officer would reasonably believe that his conduct did not violate a clearly established right – is a mixed question of law and fact.  See, e.g., Lennon v. Miller, 66 F.3d 416, 422 (2d Cir. 1995); see also

16

Oliveira v. Mayer, 23 F.3d 642, 649-50 (2d Cir. 1994).  When there are no disputes about the material facts of a case, a court should determine whether the defendant's behavior was objectively reasonable. Oliveira, 23 F.3d at 649.  However, when there are disputes of material facts, the jury should be required to resolve the facts.  Blissett v. Coughlin, 66 F.3d 531, 538 (2d Cir. 1995).  Once a court receives a jury's decision regarding the material facts, the court should use the facts found by the jury to "make the ultimate legal determination whether qualified immunity attaches on those facts." Stephenson v. Doe, 332 F.3d 68, 81 (2d Cir. 2003).

In this case, because the Court concludes that there are material questions of fact relating to Plaintiff's arrest and the conduct of Defendants, the Court may not rule on the qualified immunity issue at this point and may not grant Defendants' Motion under this theory.

### 3.   Defendants with No Personal Involvement

Defendants finally contend that even if the Court does not grant summary judgement based on any of the other theories advanced, the Court should grant summary judgment as to all of the Defendants except Defendant Bowles because they lacked personal involvement with the alleged constitutional violation.  Mot. at 10-11.  Defendants argue that Defendant Bowles is the only individual alleged by Plaintiff to have actually used excessive force against him and caused injury.  Id.  For the following reasons, the Court adopts Defendants' reasoning as to this line of argument and grants summary judgment as to all named Defendants with the exception of Defendant Bowles.

"Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on a claim for damages under § 1983."  Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001); see also Hafer v. Melo, 502 U.S. 21, 25 (1991).  A plaintiff may establish "personal involvement" by producing evidence of direct participation by a supervisor in the challenged conduct

or by providing evidence of a supervisory official's: "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003). "A complaint based upon a violation under Section 1983 that does not allege the personal involvement of a defendant fails as a matter of law." Sullins v. Nassau County Jail Correctional Center, No. 12-CV-2632, 2012 WL 2458213 (E.D.N.Y. June 27, 2012) (citing Johnson v. Barney, 360 F. App'x 199 (2d Cir. 2010)).

In this case, Plaintiff has alleged some degree of involvement by each of the named Defendants; however, the majority of the Defendants are – at this stage in the litigation – clearly vestiges of a wide range of Plaintiff's constitutional claims that the Court has already dismissed.  While members of the District Attorney's staff or county clerks might theoretically have been participants in an alleged malicious prosecution (although the Court has concluded that they were not in this case), the Court cannot conceive of how they might have been involved in the alleged use of excessive force by arresting officers.   In his Response and Cross-Motion, Plaintiff provides no support for any sort of supervisory liability and produces no cogent explanation for the continued presence of non-officer Defendants in the caption of this case.  As a result, all claims against non-officer Defendants are dismissed.

As to the named officer Defendants, the Court concludes that Plaintiff has failed to provide support for claims against officers other than Defendant Bowles sufficient to lead a reasonable jury to find in Plaintiff's favor.  That is, as discussed in Part IV.B.1., supra, Plaintiff's claims that his constitutional rights were violated because Defendant Nuttal forcefully handcuffed him and that other

officers drew their weapons must fail as a matter of law.  Absent any claims invoking supervisory liability or enterprise liability against the other officers, therefore, the Court finds that the other Officer Defendants lacked "personal involvement"[11] in the alleged violation of Plaintiff's Fourth Amendment right to be free from excessive force and grants summary judgment for these Defendants.

### C.  Plaintiff's Cross-Motion

In addition to responding to Defendants' Motion for summary judgment, Plaintiff's Cross-Motion appears to seek assorted relief, particularly the reconsideration of several previous motions. Cross-Mot. at 1-2.  In arguing that a prior motion should be reconsidered, Plaintiff must overcome a high threshold.  Analytical Surveys, Inc., 2012 WL 1970389.  Plaintiff has provided the Court with no compelling reason to believe that this request is anything more than an attempt to "relitigate an issue already decided."  Shrader, 70 F.3d at 257.  Further, Plaintiff has already requested that the Court reconsider many of these issues, and the Court has already denied this request.  See Dkt. Nos. 21-22. Given that Plaintiff has failed to point to (1) an intervening change in law; (2) the availability of evidence not previously available; or (3) the need to correct a clear error of law or to prevent manifest injustice, the Court denies his request for reconsideration.  See Virgin Atlantic Airways, 956 F.2d at 1255.

Even construing Plaintiff's Cross-Motion liberally, the Court is unable to identify any other cognizable or vaguely supported claims for relief in the "combined motion" and as a result denies Plaintiff's Cross-Motion in its entirety.

---

[11]  The Court notes that Plaintiff argues and Defendants acknowledge that Defendants Officer James Molesky, Sergeant David Dean, Officer Adam Mason, and Patrol Sergeant Guido Gabriel were present at the scene of the arrest.  Dkt. No. 114-1 ¶¶ 10, 18, 26.  However, without more, the Court cannot conclude that the officers' mere presence at the scene of the arrest constitutes "personal involvement" in Defendant Bowles alleged kicking of Plaintiff.

**V.      CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion for summary judgment (Dkt. No. 114) is **GRANTED in part** and **DENIED in part**, consistent with this Memorandum-Decision and Order, and that all named Defendants other than Officer William Bowles are hereby **DISMISSED** from this action; and it is further

**ORDERED**, that the Plaintiff's Cross-Motion (Dkt. No. 119) is **DENIED in its entirety**; and it is further

**ORDERED**, that the Clerk serve a copy of this Memorandum-Decision and Order on all parties.

**IT IS SO ORDERED**.


DATED:      July 12, 2012
            Albany, New York


Lawrence E. Kahn
U.S. District Judge